IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,                              No. 2:10-cr-00216 KJN

        v.

KWESI NGISSAH,

        Defendant.                            <u>ORDER</u>

_____/

        Defendant is charged with misdemeanor possession of a controlled substance, marijuana, in violation of 21 U.S.C. § 844(a).  (Dkt. No. 1.)  Pending before the court is defendant's motion to suppress evidence seized from him by U.S. Forest Service Officer Marcus ("Officer Marcus"), and statements allegedly made by defendant, on March 6, 2010.  (Dkt. No. 7.)  Defendant's motion was before the court for a non-evidentiary hearing on July 26, 2010.  (Dkt. No. 12.)  Catherine Chyi, a certified law student supervised by Assistant United States Attorney Matthew Stegman, appeared on behalf of the government.  Rebecca Kaiser, a certified law student supervised by Assistant Federal Defender Lauren Cusick, appeared on behalf of defendant.  The undersigned concludes that no evidentiary hearing is necessary, and, for the reasons that follow, will deny defendant's motion to suppress.

////

I.     BACKGROUND

At the outset, the undersigned notes that counsel for the government referred to a statement of probable cause at the hearing on defendant's motion, but never filed that statement with the court.  Similarly, defendant's counsel introduced new alleged facts at the hearing regarding the use of marijuana on the day in question that are unsupported by evidence in the record and are contradicted by the video and audio recording in the record.  This approach is unhelpful to the court with respect to ascertaining the complete state of facts underlying the present dispute and resolving this motion.[1]  Accordingly, the undersigned has taken the facts of this case from the DVD recordings lodged by the parties at the court's request, which consist of video and audio recordings of the events at issue.  (Dkt. Nos. 10, 11.)

The DVD recording shows that on March 6, 2010, at approximately 1:02 p.m., Officer Marcus was patrolling the parking lot of the Sierra-At-Tahoe Mountain Resort, which sits on federal land.  The recording shows that Officer Marcus drove slowly up and down the lanes of the parking lot and eventually drove just past where defendant and a group of people were having a party at the tailgate of a vehicle, stopped quickly, backed his vehicle up immediately adjacent to the "tailgate" party, turned on the sound of his mounted dashboard camera, and exited his vehicle.[2]  As reflected in the recording at 1:04:26 p.m., Officer Marcus then stated, in a tone of voice that could be fairly characterized as authoritative and perhaps aggressive: "Who's smokin' weed?"  Someone in the group responded: "Huh?"  Then, Officer Marcus, speaking rapidly in the

---

[1] The undersigned recognizes that "counsel" are certified student attorneys and that these failings might have been inadvertent or part of the learning process.  The undersigned hopes that the certified law students will learn that it is always more helpful to the court, and to counsel's credibility with the court, when counsel provides a complete and accurate recitation of the relevant facts.

[2] Because of the angle of the dashboard camera and the orientation of the vehicles in the parking lot, at no point in the DVD can the viewer actually see the vehicle in front of which defendant and his group of friends were tailgating.  However, the location of vehicle can be inferred from the movements of Officer Marcus and defendant during the incident in question, and the audio in the DVD provides information about the interaction as well.

same tone of voice, inquired:

> Who's smokin' weed? Your eyes are glazed and red. Who's smokin' weed? I can smell it. I drove past here, I can smell it. Who's got weed? I'll tell you I can smell it and I know it from here. Who's got weed on him?

As indicated in the recording at 1:04:41 p.m., approximately 16 seconds after Officer Marcus spoke his first words to the group, defendant responded: "I do."

Officer Marcus then asked defendant how much weed he had in his possession, and defendant responded that he had "this bowl" and also had a small bag of marijuana in his pocket. Officer Marcus asked defendant where the bowl was, and defendant responded that it was "right there" (apparently in the back portion of the vehicle where the tailgate was occurring). He then asked the other group members whether they had any marijuana, informed them that he could search the vehicle, and that they had to be truthful. Officer Marcus ultimately did not search the vehicle.

Officer Marcus also asked defendant to walk around to the front of the patrol vehicle. In doing so, Officer Marcus stated: "Go ahead and put your beer down." Defendant hesitated, and Officer Marcus responded, "seriously." Defendant briefly hesitated, and Officer Marcus continued to direct defendant to the front of his vehicle until defendant complied.

Once in front of Officer Marcus's vehicle, Officer Marcus directed defendant to place his hands behind his back and interlace his fingers, and to spread his legs wide. He did not handcuff defendant. Officer Marcus retrieved the bag of marijuana, which defendant confirmed contained approximately "half an eighth" of marijuana. Officer Marcus then provided defendant with <u>Miranda</u> warnings and asked defendant if he would like to talk about the incident. Defendant calmly replied, "Yes, sir."

In response to Officer Marcus's questions that followed, defendant confirmed, among other things, that he did not have a doctor's recommendation or other legal authorization to possess marijuana, that he knew that marijuana remains illegal under federal law, and that he

had brought marijuana with him for "recreational purposes." The recording also reflects that at 1:07:23 p.m., Officer Marcus asked defendant the following question: "How much did you smoke?" Defendant responded: "I just started." During this exchange, defendant indicated that he intended to smoke marijuana and then go snowboarding. Officer Marcus and defendant engaged in a brief discussion regarding whether it is advisable to smoke marijuana prior to snowboarding and whether marijuana might impair defendant.

Officer Marcus ultimately issued a citation to defendant for violation of 21 U.S.C. § 844(a), for possession of a controlled substance. Approximately 12 minutes elapsed between the time Officer Marcus initially drove past the tailgate party and the time Officer Marcus gave the citation to defendant and finished answering defendant's questions about the implications of the citation at 1:16:24 p.m.[3] Subsequently, and after defendant had walked away from Officer Marcus's vehicle, another member of the group, apparently the owner of the vehicle, engaged Officer Marcus in discussion in an attempt to convince Officer Marcus not to include his vehicle's license plate number in the police report. That other person conveyed that this was only the second time he had socialized with "these guys" and did not know that they smoked marijuana. The entire encounter ended at 1:18:17 p.m.

On June 8, 2010, the government filed an information charging defendant with a misdemeanor violation of 21 U.S.C. § 844(a) for knowingly and intentionally possessing a Schedule I controlled substance, marijuana. On July 9, 2010, defendant filed the instant motion seeking to suppress.

////

////

////

---

[3] The recording reflects that several minutes of the encounter involved Officer Marcus's attempts to verify defendant's identification with his dispatch office. Defendant did not have any identification with him, and there was some confusion regarding the correct spelling of defendant's name for verification purposes.

4

## II. DISCUSSION

### A. Officer Marcus had a reasonable articulable suspicion that defendant and his group were engaging in criminal activity.

Defendant first argues that he was unlawfully seized by Officer Marcus because Officer Marcus lacked a reasonable suspicion supported by articulable facts that defendant was engaged in criminal activity. In support of his argument that he was seized, defendant cites to Officer Marcus's aggressive tone of voice, repeated questions regarding who was smoking marijuana, and statement that he could smell marijuana. In challenging the factual basis of Officer Marcus's suspicion that criminal activity was afoot, defendant argues in his briefing that: (1) "nobody was smoking marijuana when Officer Marcus approached"; (2) "Officer Marcus only found one smoking device, which was in the closed car when Officer Marcus approached"; (3) "[i]t is difficult to believe that Officer Marcus's sense of smell was so strong as to detect that outside [of burning or freshly burnt] marijuana odor from the inside of a moving vehicle"; and (4) the smell of alcohol being consumed by the members of the group "would likely overpower any alleged marijuana smell on only one person who was no longer smoking." At the hearing, defendant attempted to undercut the basis for Officer Marcus's reasonable suspicion with the new assertion that although defendant possessed marijuana at the scene, someone else in the group smoked the marijuana and had done so earlier in the day such that the only odor left would be residual in nature. Defendant also attempts to attack Officer Marcus's credibility in this case by citing to prior, unrelated cases where Officer Marcus's credibility came under attack.

Even assuming that defendant was seized within the meaning of the Fourth Amendment, the government has met its burden to show that Officer Marcus had a reasonable suspicion of ongoing criminal activity. "To constitute reasonable suspicion, the officer's belief that criminal activity is afoot must be supported by 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion.'" United States v. Drake, 543 F.3d 1080, 1088 (9th Cir. 2008) (quoting Terry v. Ohio, 392 U.S. 1, 21

(1968)) (modification in original). Here, the DVD recording indicates that Officer Marcus smelled marijuana upon driving up to and past defendant's group's tailgate party. Officer Marcus drove past the tailgate party, but quickly stopped his vehicle and backed his vehicle up. Moreover, he exited his vehicle and almost immediately stated that he could smell marijuana. This constitutes a reasonable articulable suspicion that criminal activity was afoot.

Defendant's attacks on the factual basis of Officer Marcus's reasonable suspicion lack merit. First, defendant's suggestion that Officer Marcus could not have smelled marijuana because "nobody was smoking marijuana when Officer Marcus approached" is belied by the recording. During defendant's interaction with Officer Marcus, defendant confirmed that he had begun smoking marijuana just prior to the time Officer Marcus arrived on the scene. In response to Officer Marcus's question regarding how much marijuana defendant had smoked, defendant responded that he had "just started" smoking marijuana. Defendant related that his plan was to smoke marijuana and then go snowboarding, which resulted in a colloquy between Officer Marcus and defendant regarding the wisdom of the choice to smoke marijuana immediately prior to snowboarding.[4]

Second, defendant's confirmation that he had already begun smoking marijuana undercuts defendant's counsel's assertion offered at the hearing that someone other than defendant had been smoking marijuana and did so earlier in the day. Again, the recording indicates otherwise.

Third, defendant's argument that Officer Marcus could not have smelled the marijuana because it was inside a closed vehicle is also undercut by defendant's statement that he had "just started" smoking marijuana. Moreover, the recording indicates that the bowl of marijuana was in easy reach of defendant, who retrieved it at the direction of Officer Marcus.

---

[4] At the hearing, defendant's counsel represented, although not with much certainty, that she believed defendant's statements pertaining to smoking marijuana prior to snowboarding were only forward-looking statements. This assertion is belied by the video and audio evidence.

When initially asked about the marijuana in his possession, defendant referred to "this bowl," which suggests that the bowl was within view or in near proximity. In any event, regardless of where the bowl was located, defendant's statement supports Officer Marcus's reasonable suspicion that criminal activity was afoot.

Fourth, defendant's assertions that Officer Marcus could not smell burning or freshly burnt marijuana while inside his slow-moving vehicle, and that the smell of alcohol being consumed by the group would have likely overpowered the scent to marijuana, constitute counsel's unbridled speculation. Defendant has submitted no admissible evidence in support of these assertions. At the hearing, defendant's counsel stated that if the court were to hold an evidentiary hearing, defendant would not, and could not, offer the testimony of an expert witness regarding one's ability to smell burnt marijuana, unburnt marijuana, or marijuana smoke residue while in a moving vehicle. She stated that defendant would rely only on the testimony of other members of the tailgate party group regarding the strength of the smell of marijuana at the scene. Such testimony would be unhelpful, especially in light of defendant's admission that he had already begun smoking marijuana just prior to Officer Marcus's arrival at the scene. Furthermore, it is evident as a matter of common experience that air and odors from outside of a vehicle—whether it be marijuana or cow manure—can pass through the ventilation ducts of a vehicle and into the passenger compartment. Without more, defendant's arguments lack merit.

Finally, defendant attempts to assail Officer Marcus's credibility on the basis of suggested factual contradictions that arose in previously decided, unrelated cases involving Officer Marcus. The undersigned gives no weight to those prior cases in resolving the pending motion.[5] As an initial matter, defendant has made no attempt to establish the admissibility of this

---

[5] Interestingly, the judge in at least one of the cases cited by defendant also refused to consider Officer Marcus's actions in previously decided, unrelated matters in assessing Officer Marcus's credibility relative to a pending motion to suppress. (See United States v. McCluer, No. 2:09-cr-00339 KJM, Dkt. No. 21 at 2-3, attached as Ex. A to Def.'s Reply in Supp. of Mot. to Suppress.)

7

evidence—he merely offers a lengthy footnote of string-cited cases in an effort to pique the court's interest. Moreover, defendant has not asked the court to take judicial notice of those cases and, even if such a request had been made, the court would not take judicial notice of factual findings made in those prior cases or disputed facts in those cases. See Wyatt v. Terhune, 315 F.3d 1108, 1114 & n.5 (9th Cir. 2003) ("[W]e have held that taking judicial notice of findings of fact from another case exceeds the limits of [Federal Rule of Evidence] 201."); M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983) ("As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it."); Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001) ("[a] court may not take judicial notice of a fact that is "subject to reasonable dispute.") (citation omitted).

For the foregoing reasons, the undersigned finds that Officer Marcus had a reasonable suspicion that is supported by the factual record and that defendant was not unlawfully seized.

      B.      <u>Officer Marcus did not illegally compel defendant's statements.</u>

Next, defendant argues that Officer Marcus "illegally compelled" or "improperly induced" his initial admission that he possessed marijuana. He argues that "[n]o reasonable person would feel free to not answer [Officer Marcus's] domineering questions." The undersigned disagrees.

In assessing the voluntariness of a confession, the court must determine "whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." United States v. Heller, 551 F.3d 1108, 1112 (9th Cir. 2009) (citation and quotation marks omitted); see also United States v. Crawford, 372 F.3d 1048, 1060 (9th Cir. 2004) ("A confession is involuntary if coerced either by physical intimidation or psychological pressure" (citation and quotation marks omitted).). "A statement is involuntary if it is 'extracted by any

sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" United States v. Bautista-Avila, 6 F.3d 1360, 1364 (9th Cir. 1993) (modifications in original) (quoting United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir. 1988)). "In determining whether a defendant's confession was voluntary, the question is whether the defendant's will was overborne at the time he confessed." Crawford, 372 F.3d at 1060 (citation and quotation marks omitted).

Here, defendant admitted that he possessed marijuana after approximately 16 seconds of questioning by Officer Marcus to a group of people tailgating in an open parking lot. Officer Marcus's tone could fairly be characterized as stern, even somewhat aggressive. However, Officer Marcus did not use physical coercion, threats of violence, or promises to obtain defendant's admission. And, contrary to defendant's suggestion, Officer Marcus's very brief questioning of a group of people hardly amounted to psychological coercion under the totality of the circumstances. Defendant's will was not overborne by any alleged psychological coercion. This is evidenced by the fact that after defendant's admission and after Officer Marcus directed defendant to walk to the front of the patrol vehicle, defendant hesitated in complying with this command to a degree that Officer Marcus had tell defendant to put his beer down and come to the front of the vehicle. This hardly suggests that defendant's will had been overborne by psychological coercion. Accordingly, the undersigned concludes that, under the totality of the circumstances, defendant's admission that he possessed marijuana was not illegally compelled.

      C.     <u>Defendant was not immediately "in custody."</u>

Finally, defendant contends that he was "in custody" when Officer Marcus first began questioning defendant and the other members of the group. In essence, defendant takes the position that Officer Marcus was obligated to immediately provide Miranda warnings upon exiting his vehicle and prior to asking any questions of the group.

"An officer's obligation to give a suspect *Miranda* warnings before interrogation extends only to those instances where the individual is 'in custody.'" United States v. Kim, 292

9

F.3d 969, 973 (9th Cir. 2002) (citing Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam)). "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" Stansbury v. California, 511 U.S. 318, 322 (1994) (per curiam) (internal quotation marks omitted, modification in original) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Id. The Ninth Circuit Court of Appeals has identified several, non-exhaustive factors that are "relevant to the custody determination: '(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual.'" United States v. Bassignani, 575 F.3d 879, 883-84 (9th Cir. 2009) (quoting Kim, 292 F.3d at 974).

Here, under the totality of the circumstances, defendant was not in custody at the time Officer Marcus began questioning the group such that immediate provision of Miranda warnings was warranted. First, the language used by Officer Marcus to summon defendant was stern and authoritative, but was not threatening. His tone favors defendant's argument to some degree, but the undersigned cannot conclude that Officer Marcus's approach favors a finding that defendant was in custody. Moreover, the recording reflects that much of Officer Marcus's initial comments or questions were directed at the group, not just defendant.

Second, Officer Marcus confronted defendant with some evidence of guilt, stating that he smelled marijuana and that someone's eyes were red and glassy. This factor favors defendant's argument, but not enough to overcome the remaining factors under the totality of the circumstances.

Third, the surroundings of the interrogation do not suggest that defendant was in custody. Defendant was not questioned in a locked interrogation room at a police station or some other secured or confined space. The events in question took place in a public parking lot, where other members of defendant's group and employees of the ski resort were present. Indeed, the audio recording reflects that defendant was still holding a beer while talking to Officer Marcus. The undersigned gives little weight to defendant's argument that the orientation of Officer Marcus's vehicle perpendicular to defendant's group's vehicle suggests that it was impossible for defendant and his group to leave. The DVD reveals that Officer Marcus's car was stopped in the relatively narrow driving lane of the parking lot just past a sharp turn, and that Officer Marcus had few other places to stop his car. In any event, nothing suggests that defendant was not free to walk away from the scene between the time Officer Marcus arrived at the scene and defendant's admission.

Fourth, the duration of this detention was short, which favors a finding that defendant was not in custody. Approximately 16 seconds passed between the time Officer Marcus posed his first question to the group and defendant admitted that he possessed marijuana. Approximately, one minute and 32 seconds elapsed between defendant's admission and the point at which defendant was provided <u>Miranda</u> warnings. And the entire detention, from the time Officer Marcus exited his vehicle to the time he finished issuing and explaining the citation, was approximately 12 minutes.

Fifth, Officer Marcus did not exert any great degree of pressure in detaining defendant. There is no doubt that Officer Marcus used a stern tone when he initially began speaking to defendant and other members of his group. In addition, Officer Marcus did not tell defendant that he was free to leave, and ultimately restrained defendant just prior to reading

////

////

////

Miranda warnings to defendant.[6]  However, Officer Marcus's initial approach that resulted in defendant's admission did not reflect the type of pressure associated with a finding that defendant was immediately in custody.

The undersigned finds the following additional facts relevant.  Officer Marcus was on patrol by himself and was outnumbered by defendant's group.  In addition, Officer Marcus never drew a weapon.  Additionally, as discussed above, the recording indicates that defendant was not overcome by Officer Marcus's initial questioning.  After defendant admitted that he had marijuana, Officer Marcus directed defendant to walk to the front of the patrol vehicle and had to tell defendant that he was serious and to put his beer down before defendant complied with Officer Marcus's order.  This demonstrates that Officer Marcus had not overcome defendant's will at the time defendant admitted that he possessed marijuana.

III.    CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that defendant's motion to suppress is denied.

IT IS SO ORDERED.

DATED: August 2, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[6] To the extent that defendant would seek to suppress any statements between the time Officer Marcus restrained him at the front of the vehicle and read him the Miranda warnings, the only statement made by defendant during that period was a brief inquiry regarding what was going to happen.  Officer Marcus responded that he was going to administer the Miranda warnings.